[Cite as *Stepp v. Starrett*, 2020-Ohio-3814.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
VINTON COUNTY

| | | |
|---|---|---|
| Shawn E. Stepp, II, | : | Case No. 19CA718 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Michele Starrett, et al., | : | |
| | : | **RELEASED 7/14/2020** |
| Defendants-Appellees. | : | |
| | : | |

APPEARANCES:

Sky Pettey, Lavelle and Associates, Athens, Ohio for Appellant.

Stephen C. Rodeheffer, Portsmouth, Ohio for Appellees.

Hess, J.

**{¶1}** Shawn E. Stepp, II appeals the trial court's order dismissing his claims against Michele Starrett, individually and in her capacity as the trustee for the Lawrence G. Daft Revocable Living Trust Agreement; the Lawrence G. Daft Revocable Living Trust Agreement; and Daft Farms Family Limited Partnership. Stepp sought an accounting and alleged breaches of the limited partnership agreement and breaches of the fiduciary duties of loyalty and care. The trial court granted appellees' motion for summary judgment on the ground that Stepp lacked standing, dismissed Stepp's amended complaint, and assessed costs against Stepp. Stepp appealed, but we dismissed the appeal for lack of a final appealable order. *See Stepp v. Starrett,* 4th Dist. Vinton No. 18CA714, 2019-Ohio-4707. The action involved multiple claims and parties and the counterclaim of Daft Farms

Family Limited Partnership ("Daft Farms") against Stepp remained pending. The judgment entry appealed failed to include a determination that "there is no just reason for delay" as required by Civ.R. 54(B).

**{¶2}** The trial court subsequently entered a judgment entry that included a determination that there is no just reason for delay and Stepp appealed.

**{¶3}** We find that the trial court erred as a matter of law in granting the appellees summary judgment. There are genuine issues concerning whether Starrett was a general partner in Daft Farms. The evidence in the record, when construed most favorably to Stepp, indicates that Starrett was never a general partner. Likewise, there are genuine issues concerning Stepp's limited partnership interest as the evidence indicates that Stepp received limited partnership interests in Daft Farms in 2005 and 2006. Reasonable minds can come to several conclusions concerning the relevant documents. Appellees are not entitled to summary judgment in their favor. The trial court erred in dismissing Stepp's amended complaint.

## I.       FACTS AND PROCEDURAL BACKGROUND

**{¶4}** This case involves a family farm dispute. Lawrence Daft was the father of Starrett and grandfather of Stepp. Starrett is Stepp's mother. This dispute is between mother, Starrett, and son, Stepp. In 2002 Lawrence Daft and Starrett created a family farm limited partnership called Daft Farms. At Daft Farm's inception, Lawrence Daft was the sole general partner holding 100 general partner units (100% of the units) and the majority limited partner with 899 limited partner units. Starrett was a limited partner with 1 limited partner unit. In 2005 and 2006 Lawrence Daft assigned a total of 75 limited partner units to Stepp and declared that Stepp was a limited partner in Daft Farms. These

assignments are disputed by the appellees as they claim that the assignments were ineffective. In 2010 Lawrence Daft assigned all of his general partner units to the Lawrence G. Daft Revocable Living Trust Agreement ("Trust"), making the Trust the general partner. In 2014, Lawrence Daft died and Starrett became the trustee of the Trust.

{¶5}    In April 2016, Stepp filed an action against Starrett in her individual capacity and in her capacity as the sole general partner of Daft Farms asserting claims for an accounting, breach of limited partnership agreement, and breach of fiduciary duties. In response Starrett filed a motion to dismiss the complaint or, in the alternative, join necessary parties. In the motion Starrett argued that she was not the general partner of Daft Farms, she was a limited partner. She alleged that Daft Farms was created in 2002 and that the sole general partner was Lawrence Daft from 2002 until 2010, when he transferred 100% ownership of his general partnership to the Trust. Starrett attached a written document to her motion which Lawrence Daft signed stating that in September 2010 he "assigned or transferred" 100% ownership of the general partnership units (100 units) in Daft Farms to the Trust.  Starrett argued that because she is not a general partner in Daft Farms, Stepp's claims against her in that capacity should be dismissed. She argued that Lawrence G. Daft's Estate (Daft was deceased), would be the necessary party for claims against the general partner from 2002 to 2010 and the Trust was a necessary party for claims against the general partner after 2010. Starrett also argued that Daft Farms was an indispensable party.

{¶6}    In March 2017, Stepp filed a motion for leave to amend his complaint and a response to Starrett's motion to dismiss/joinder. In his motion, Stepp contended that he was unaware that Starrett was merely acting as general partner of Daft Farm by virtue of

being trustee of the Trust. Stepp agreed that the Trust should be joined but that he was not asserting any claims against the Lawrence G. Daft Estate and would not add the Estate as a party. The trial court granted leave and Stepp filed his first amended complaint naming Starrett individually, Starrett as trustee of the Trust, the Trust, and Daft Farms. He made no other substantive changes to his allegations.

{¶7} The defendants filed answers. Starrett filed a separate answer in her individual capacity and denied that she was a general partner of Daft Farms or that she ever received compensation as a general partner: "Defendant [Starrett] denies the allegations set forth in paragraph eighteen (18) of Plaintiff's Amended Complaint insofar as they allege that she is the General Partner of Daft Farms. * * * Defendant [Starrett] denies the allegations set forth in Plaintiff's Amended Complaint paragraph thirty-six (36) to the extent that it alleges that she is the General Partner of Daft Farms. Defendant further denies paragraph thirty-six * * * to the extent that it alleges that she receives any compensation as General Partner of Daft Farms." Starrett admitted that she was the trustee of the Trust and the Trust was the general partner of Daft Farms.

{¶8} Previously, in her motion to dismiss, Starrett submitted a 2010 Resolution in which Lawrence Daft stated that he owned 100% of the general partner units in Daft Farms and he assigned and transferred his general partnership units to the Trust. Oddly, in the separate answer filed by the Trust, Daft Farms, and Starrett as trustee, these defendants stated they were without knowledge as to whether the Trust was the general partner of Daft Farms. Inexplicably, this denial was made even though (1) Starrett, in her individual capacity, admitted that the Trust was the general partner of Daft Farms and (2) the defendants' answer was captioned, "Answer of Defendants Michele Starrett, in her

capacity as the Trustee for *the Lawrence G. Daft Revocable Living Trust Agreement which is the General Partner of the Daft Farms Family Limited Partnership*, The Lawrence G. Daft Revocable Living Trust Agreement, and Daft Farm Family Limited Partnership." (Emphasis added.)

{¶9} Daft Farms filed a counterclaim against Stepp in which it alleged that Stepp damaged a cabin on farm property and wrongfully removed tools. It sought an $8,000 judgment against him. Stepp denied the allegations of wrongdoing.

{¶10} After the parties conducted some discovery, Starrett, in both her individual and trustee capacities, filed a second motion to dismiss for failure to join necessary parties, or alternatively to join necessary parties. Starrett contended that the Lawrence G. Daft Estate and Daft Farms were necessary parties and needed to be joined to the lawsuit. She argued that Daft Farms was not an existing party to the proceedings, even though the first amended complaint included Daft Farms as a defendant and Daft Farms had previously filed a counterclaim against Stepp.

{¶11} In her second motion to dismiss, Starrett claimed to reserve the right to challenge the existence of Daft Farms and any interests the partners hold. She contended that she had reason to believe that certain transfers of ownership interest in Daft Farms were not valid and "thus, Plaintiff [Stepp] may not be a Limited Partner of Daft Farms * * * and nothing in this Motion shall be construed as an admission that Plaintiff is a limited partner." Starrett contended that Lawrence G. Daft created Daft Farms on June 20, 2002 and assigned himself 100% of the general partnership units (100 units). "Prior to September 20, 2010, Lawrence G. Daft was the sole General Partner of Daft Farms." She further represented that she has only served as trustee of the Trust upon Lawrence

Daft's death in 2014 and upon Daft's death the Trust became the general partner of Daft Farms. She argued that Stepp's claims were for breaches dating back to 2002 and therefore the Lawrence G. Daft Estate should be joined. "Attributing any liability to Michele Starrett, prior to 2014, when she became Trustee of the Trust, as Plaintiff seeks to do, would be improper."

{¶12} Stepp opposed the motion on the ground that he was not asserting claims against the Estate and Daft Farms was already a party. The trial court did not issue a ruling on the motion.

{¶13} Next, Starrett in her capacity as trustee, the Trust, and Daft Farms filed a motion for summary judgment in which these defendants argued that Stepp had no ownership interest in Daft Farms. Starrett claimed that she became trustee of the Trust and the Trust became the general partner of Daft Farms in 2014 when Lawrence Daft died. The defendants attached to their summary judgment motion a copy of the Limited Partnership Agreement of Daft Farms dated June 20, 2002, which identified Lawrence Daft as the sole general partner and Lawrence Daft and Starrett as limited partners. The section of the Limited Partnership Agreement that identified the capital contributions made by the general partner and the two limited partners listed Lawrence Daft as contributing 99.9% and Starrett .1% of the initial capital contribution. The Limited Partnership Agreement provided the method by which limited partnership interests may be transferred or assigned. The Limited Partnership Agreement was signed by Lawrence G. Daft as "General Partners" [sic] and by Lawrence G. Daft and Michele Starrett as "Limited Partners."

**{¶14}** The defendants also attached an Assignment and Gift of Partnership and an Amended Assignment and Gift of Partnership, both also dated June 20, 2002. The Amended Assignment and Gift of Partnership was made to correct typographical errors in the number of limited partnership units held by Starrett and Lawrence G Daft from 10 and 89 respectively, to 1 and 899. The Amended Assignment and Gift of Partnership states that Lawrence G. Daft owns 100 units as general partner and 899 units as a limited partner and Michele Starrett owns 1 unit as a limited partner.[1]  For sake of simplicity, we will refer to the 2002 Assignment and Amended Assignment as the "2002 Assignment." The defendants argued that the effect of the 2002 Assignment was "to make Mr. Daft and Ms. Starrett co-owners of both the outstanding general and limited partnership units" and "*a recognition that Michele Starrett was from this date [June 20, 2002] forward a general partner*" of Daft Farms.[2] (Emphasis added.) Starrett also attached the Certificate of Ohio Limited Partnership filed with the Secretary of State, which listed both Lawrence Daft and Michele Starrett as general partners. This filing did not identify limited partners and was "Executed by the General Partner" Lawrence Daft. Lawrence Daft was appointed as the statutory agent for Daft Farms. The statutory agent appointment identified Lawrence Daft and Michele Starrett generically as "partners" and did not specify either as "general" or "limited."

---

[1] The Amended Assignment and Gift of Partnership appears to include an additional typographical error as it refers to 100 general partnership units and *1000 limited partnership units*, though the total limited partnership units in 2002 would be 900, and the total combined general and limited partnership units would be 1000. However, because at some point between 2002 and 2005 an additional 100 limited partnership units presumably were issued to Lawrence Daft, the reference to "1000 limited partnership units" could indicate that the Amended Assignment was actually created in 2005, with the intent that the typographical correction to Starrett's and Daft's limited partnership units would be retroactively effective June 20, 2002.

[2] Starrett has consistently denied ever being a general partner in Daft Farms. Her counsel argued this repeatedly in both of her motions to dismiss. And in her Answer, Starrett denied being a general partner in Daft Farms or ever receiving any compensation as such.

{¶15} The defendants argued that the fact that Starrett's name was listed as a "general partner" in the Certificate of Ohio Limited Partnership shows that Lawrence Daft intended to gift his general and limited partnership units in Daft Farms to Starrett in June 2002, when Daft Farms was created.

{¶16} The defendants also submitted two additional Assignment and Gift of Partnership Interest documents with their summary judgment motion. In the first Assignment, made in December 2005, approximately two and one-half years after Daft Farms was created, Lawrence Daft states that he owns 100 general partnership units and 999 limited partnership units in Daft Farms, which reflects an additional 100 limited partnership units more than he held in 2002. It stated that he desires to assign 75 of those additional 100 limited partnership units as follows: 25 units to his daughter, Michele Starrett and 25 units each to his two grandsons, Christian Starrett[3] and Shawn Stepp. In the second Assignment, made in December 2006, Lawrence Daft states that he owns 100 general partnership units and 924 limited partnership units.[4] Again, this 2006 Assignment contains a typographical error as Lawrence Daft states that he intends to assign 824 limited partnership units in one part of the document, but then assigns a total of 924: 824 to Michele Starrett, 50 to Christian Starrett, and 50 to Shawn Stepp. In the "Agreement" paragraph, Lawrence Daft states that he assigns 924 limited partnership units, thus divesting himself of all of his limited partnership units in Daft Farms and

---

[3] Christian is Starrett's other son and Stepp's half-brother. He is not a party to this action.

[4] The 924 limited partnership units appears to have been calculated by taking Lawrence Daft's original 899 units issued and owned in June 2002, adding an additional 100 units presumably issued by Daft Farms to Lawrence Daft sometime between June 2002 and December 2005, and subtracting the 75 units gifted to his daughter and two grandsons. Regardless of whether Lawrence Daft owned 924 or 824 partnership units, the document shows that his intent was to assign all of his limited partnership units to his daughter and grandsons, 50 each to his grandsons and the balance to his daughter.

transferring it to his daughter and two grandsons. Lawrence Daft retained his 100 general partnership units.

{¶17} The defendants argued that the 2005 and 2006 Assignments were deficient and failed to pass any interest to Michele Starrett, Christian Starrett or Shawn Stepp. They contend that because these 2005 and 2006 Assignments failed to transfer any limited partnership units to Stepp, he has no interest in Daft Farms and no standing to bring a suit for an accounting, breaches of the partnership agreement, and breaches of fiduciary duties. They argued that the Limited Partnership Agreement provides the manner in which limited partnership units may be assigned and Lawrence Daft was not free to transfer any of his limited partnership units without the consent of the general partner – which was not only Lawrence Daft himself, but also included Michele Starrett. This argument hinges entirely upon their contention that Michele Starrett became a general partner in June 2002, when Daft Farms was created, despite Starrett's consistent denial of it throughout these proceedings.

{¶18} The defendants also contended that there was no evidence that any of the three assignees signed a document accepting the assignment of limited partnership units or that they paid their respective $1000 transfer fee as required by Section 10.3 of the Limited Partnership Agreement.

{¶19} To their summary judgment motion, the defendants attached a copy of the Daft Farms Limited Partnership Agreement, the original and Amended Assignment of June 2002, the Secretary of State Certificate of Limited Partnership, and the 2005 and 2006 Assignments. The defendants did not submit any affidavits or deposition testimony to support their motion or their attorney's interpretation of the 2002 Assignment.

{¶20} Starrett did not file a motion for summary judgment in her individual capacity, nor seek to join in with the other defendants' motion.

{¶21} Stepp opposed the motion on the grounds that there was a genuine issue of material fact as to whether Starrett was a general partner. Stepp argued that Starrett did not become a general partner by virtue of the 2002 Assignment and, regardless, she consented in writing to both the 2005 and 2006 Assignments, making Stepp a limited partner.

{¶22} First Stepp cited Starrett's own representations made by her attorney in her two motions to dismiss that she was not a general partner of Daft Farms. It was, in fact, the primary basis for her motions to dismiss.

{¶23} Stepp argued that the 2002 Assignment did not make Lawrence Daft and Starrett co-owners of both the outstanding general and limited partnership units. Rather the purpose of the 2002 Assignment was to set forth "the number of shares owned by each of them and stating each partner's assent to those numbers, given that the Limited Partnership Agreement did not set forth how many shares each of them owned, instead listing only the percentages of the initial capital contributions."

{¶24} Stepp submitted additional Certificate of Ownership documents dated June 20, 2002, which had not been submitted with the defendants' summary judgment motion. Certificate Number One identified 100 general partnership units and certified that Lawrence Daft was owner of the entire 100 general partnership units. It contained a signed acknowledgment by Lawrence Daft accepting the units and agreeing to be bound by the terms of the Limited Partnership Agreement. Certificate Number Two identified 900 total authorized limited partnership units of which Lawrence Daft was the owner of

890 limited partnership units. This also contained a signed acknowledgment by Lawrence Daft accepting the 890 units.  Certificate Number Three identified Michele Starrett as the owner of 10 limited partnership units and contained a signed acknowledgement by Starrett accepting the 10 limited partnership units and agreeing to be bound by the Limited Partnership Agreement. In December 2006, Certificate Number Three was amended to reflect that Starrett actually only owned 1 limited partnership unit, not 10.[5] Lawrence Daft signed the Amended Certificate as "General Partner" and Michele Starrett signed and accepted 1 limited partnership unit in Daft Farms on December 11, 2006.

{¶25}  Stepp argued that when all the documents executed on June 20, 2002 were taken together (the Limited Partnership Agreement, the Assignments, and the Certificates of Ownership) there was no question that Starrett did not become a general partner on June 20, 2002.  Because Starrett was not a general partner in 2005 and 2006, her consent was not needed for Lawrence Daft to transfer the limited partnership units to Stepp.

{¶26} Stepp provided additional documents concerning the 2005 and 2006 Assignments and Gifts of Partnership Interest. As previously noted, in 2005 Lawrence Daft assigned 25 limited partnership units to Stepp. Though the defendants contended that Starrett never consented to this, Stepp included a Certificate of Ownership for the 25 limited partnership units in which Starrett signed for and accepted them as the custodian and on behalf of Stepp, a minor at the time.[6]  Likewise in 2006, Lawrence Daft assigned 50 limited partnership units to Stepp.  Again, though defendants contended Starrett never

---

[5] It appears that although the 2002 Assignment was corrected on or after June 2002 to be effective June 2002 and changed the limited partnership units Starrett received from 10 to 1, the actual Certificate reflecting ownership was not corrected until December 2006. See discussion in footnote 1.

[6] The "Acceptance" section of the Certificate of Ownership appears to contain a typographical error and refers to the number of units as "10." All other places in the Certificate and the Assignment itself refers to "25" limited partnership units.

consented to this, Stepp produced a Certificate of Ownership signed in December 2006 by Lawrence Daft as General Partner and signed and accepted by Starrett as custodian of and on behalf of Stepp, a minor.

{¶27}  Stepp argued that under either method set forth in R.C. 1782.42(A), he was properly given a limited partnership interest in Daft Farms. First under R.C. 1782.42(A)(2), he was made a limited partner when "all other partners" consented, as evidenced by Starrett's acceptance on the 2005 and 2006 Certificates of Ownership. Second, his acquisition of his limited partnership interest was made in accordance with the Limited Partnership Agreement because he contends that the limitations on transferring limited partnership interest applies only to Limited Partners, not General Partners. Stepp argued that as a General Partner with a limited partnership interest, Lawrence Daft could transfer his limited partnership units without restriction. And, even assuming that the limitations on transfers of limited partnership interests applied equally to Lawrence Daft, the Limited Partnership Agreement gives Lawrence Daft as General Partner the authority to treat Stepp as a substituted Limited Partner, "should it [General Partner] deem, in its sole discretion, that such treatment is in the best interest of the Limited Partnership."

{¶28}  Stepp submitted his affidavit with his opposition memorandum in which he stated: (1) Lawrence Daft and Starrett always treated him, recognized him and referred to him as a Limited Partner in Daft Farms; (2) Starrett provided him with tax forms for his Limited Partnership interest in Daft Farms; and (3) Starrett made verbal offers to buy out Stepp's limited partnership interest.

{¶29}  In their reply, the defendants pointed out several of the typographical errors as illustrative of the "manifest confusion" Lawrence Daft had concerning the ownership of

Daft Farms. The defendants reiterated their argument that the 2002 Assignment formed a co-ownership by Lawrence Daft and Michele Starrett of all of the general and limited partnership interest in Daft Farms.

**{¶30}** After the parties finished briefing the summary judgment motion, the attorneys who represented Starrett in her individual capacity sought and were granted leave to withdraw as her counsel. Starrett and Stepp then engaged in a prolonged discovery dispute concerning Starrett's refusal to produce personal financial records. A forensic accountant retained by Stepp submitted an affidavit in support of the discovery requests, which included pages from the Daft Farms 2015 federal tax returns in which the Trust was identified as the "Sole General Partner" of Daft Farms.

**{¶31}** The trial court granted summary judgment in favor of Starrett, the Trust and Daft Farms. It found that the 2002 Assignment transferred the general partnership units and the limited partnership units to Lawrence Daft and Starrett equally and that Lawrence Daft and Starrett were both general partners in Daft Farms since its inception in June 2002. The trial court determined that any transfer of a limited partnership interest could only be made in accordance with the Limited Partnership Agreement or with the consent of all partners. Without giving its rationale, the trial court determined that the subsequent attempted transfers of limited partnership interest were not made in accordance with the Limited Partnership Agreement and were not consented to by all the partners. It therefore determined that Stepp did not have an ownership interest in Daft Farms, it granted defendants' summary judgment, and dismissed Stepp's amended complaint.

**{¶32}** Stepp appealed.

## II. ASSIGNMENT OF ERROR

**{¶33}** Stepp designates the following assignment of error:

I. The Trial Court Erred In Granting Summary Judgment To The Defendants.

### A. Jurisdictional Issue

**{¶34}** Before addressing the merits, we must first consider a threshold jurisdictional issue. Ohio law provides that the courts of appeals in this state have jurisdiction to review the final orders or judgments of inferior courts within their district. Section 3(B)(2), Article IV of the Ohio Constitution; R.C. 2501.02. In the event that a jurisdictional issue is not raised by the parties, then we must raise it sua sponte. *Whitaker–Merrell Co. v. Geupel Constr. Co.,* 29 Ohio St.2d 184, 186, 280 N.E.2d 922 (1972); *In re Murray,* 52 Ohio St.3d 155, 159-160, 556 N.E.2d 1169, 1173-1174, fn. 2 (1990); *Kouns v. Pemberton,* 84 Ohio App.3d 499, 501, 617 N.E.2d 701, 702 (4th Dist.1992).

**{¶35}** Here the trial court's judgment disposed of the one of the party's claims, but it did not resolve a pending counterclaim. In such instances under Civ.R. 54(B) the trial court may enter final judgment as to one or more but fewer than all of the claims or parties upon an express determination that there is no just reason for delay. Here the trial court's judgment includes the "no just reason for delay" language.

> In deciding that there is no just reason for delay, the trial judge makes what is essentially a *factual* determination—whether an interlocutory appeal is consistent with the interests of sound judicial administration, *i.e.,* whether it leads to judicial economy. Trial judges are granted the discretion to make such a determination because they stand in an unmatched position to determine whether an appeal of a final order dealing with fewer than all of the parties in a multiparty case is most efficiently heard prior to trial on the merits. The trial court can best determine how the court's and the parties' resources may most effectively be utilized. The trial court is most capable of ascertaining whether not granting a final order might result in the case being tried twice. The trial court has seen the development of the case, is familiar with much of the evidence, is most familiar with the trial court

calendar, and can best determine any likely detrimental effect of piecemeal litigation. More important than the avoidance of piecemeal appeals is the avoidance of piecemeal trials. It conserves expense for the parties and clarifies liability issues for jurors when cases are tried without "empty chairs."

In making its factual determination that the interest of sound judicial administration is best served by allowing an immediate appeal, the trial court is entitled to the same presumption of correctness that it is accorded regarding other factual findings. An appellate court should not substitute its judgment for that of the trial court where some competent and credible evidence supports the trial court's factual findings. Likewise, regarding Civ.R. 54(B) certification, where the record indicates that the interests of sound judicial administration could be served by a finding of "no just reason for delay," the trial court's certification determination must stand. An appellate court need not find that the trial court's certification is the most likely route to judicial economy, but that it is one route which might lead there. Trial courts, however, should be careful not to breach the duty entrusted to them, and should avoid a mechanical application of the Civ.R. 54(B) language. (Citations omitted.)

*Wisintainer v. Elcen Power Strut Co.,* 67 Ohio St.3d 352, 354-355, 1993-Ohio-120, 617 N.E.2d 1136.

**{¶36}** Here the record supports the trial court's determination that an interlocutory appeal is consistent with the interest of sound judicial administration. The pending counterclaim is wholly unrelated to Stepp's claims, requires proof of different facts, involves separate legal issues, and allows for differing recoveries. *See Jacobs v. Jones,* 10th Dist. Franklin No. 10AP-930, 2011-Ohio-3313, ¶ 43 (finding trial court's Civ.R. 54(B) certification proper). Thus, we have jurisdiction over this appeal.

### B. Standard of Review

**{¶37}** We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 130 Ohio St.3d 51, 2011-Ohio-4674, 955 N.E.2d 954, ¶ 12. Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary

judgment is appropriate. *Harter v. Chillicothe Long–Term Care, Inc.*, 4th Dist. Ross No. 11CA3277, 2012-Ohio-2464, ¶ 12; *Grimes v. Grimes*, 4th Dist. Washington No. 08CA35, 2009-Ohio-3126, ¶ 16.

**{¶38}** Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 128 Ohio St.3d 68, 2010-Ohio-6279, 941 N.E.2d 1187, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt,* 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264 (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293, 662 N.E.2d 264. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 4th Dist. Pickaway No. 11CA25, 2012-Ohio-3150, ¶ 17; *Wagner v. Young*, 4th Dist. Athens No. CA1435, 1990 WL 119247, *4 (Aug. 8, 1990). Once that burden is met, the nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine

issue for trial. *Dresher* at 293, 662 N.E.2d 264; Civ.R. 56(E); *Am. Express Bank, FSB v. Olsman*, 2018-Ohio-481, 105 N.E.3d 369, ¶¶ 10-11 (4th Dist.).

C. Analysis

**{¶39}** As a preliminary matter, we note that none of the documents attached to the parties' summary judgment motion and opposition memorandum were properly certified or authenticated. However, the parties did not object and the trial court did not sua sponte refuse to consider the documents in rendering its judgment. Therefore, any objections on that basis are waived. *State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 122 Ohio St.3d 260, 2009-Ohio-2871, 910 N.E.2d 455, ¶ 17 ("Although appellees did not support these pertinent facts with evidence of the kinds specified in Civ.R. 56(C), courts may consider other evidence if there is no objection on this basis."); *Martin v. Wandling*, 2016-Ohio-3032, 65 N.E.3d 103, ¶ 29 (4th Dist.) ("When the opposing party fails to object to the admissibility of the evidence under Civ.R. 56, the court may, but need not, consider such evidence when it determines whether summary judgment is appropriate."); *Jackson v. McKinney*, 2nd Dist. Montgomery No. 26288, 2015-Ohio 1977, ¶ 13 , fn. 2. (where both parties failed to authenticate documents used to support and oppose summary judgment, the appellate court considers any authentication argument waived for purposes of appeal).

**{¶40}** The trial court reviewed the 2002 Assignment and found no ambiguity as to the intent and effect of the assignment. It found that after it was executed, Lawrence Daft and Starrett "owned all units in the partnership equally."

> The Court finds that Lawrence G. Daft and Michele L. Starrett were general partners as of June 20, 2002. The Court further finds that any transfer of a limited partnership interest could be made only in accordance with the partnership agreement or with consent of all partners. The Court finds there

is nothing in the record which constitutes consent to the subsequent attempted transfers of limited partnership interests. The Court further finds the subsequent attempted transfers were not made in accordance with the partnership agreement. The Court therefore finds that Plaintiff does not own any interest in the partnership. The Court finds that there is no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law.

**{¶41}** We find that the trial court erred in granting summary judgment to Starrett, the Trust, and Daft Farms because the 2002 Assignment is ambiguous and subject to several reasonable interpretations, there was conflicting evidence as to whether Starrett was ever a general partner of Daft Farms, and compelling evidence that Stepp has a limited partnership interest in Daft Farms.

**{¶42}** The 2002 Assignment as Amended reads:

The Assignment and Gift of Partnership Interest is entered into this 20th day of June, 2002, by and between Lawrence G. Daft and Michele L. Starrett (hereinafter referred to as "Assignors") and Lawrence G. Daft and Michele L. Starrett (hereinafter referred to as "Assignees").

BACKGROUND

A. Lawrence G. Daft owns 100 Units as a General Partner and 899 units as Limited Partner in the Daft Farms Family Limited Partnership.

B. Michele L. Starrett owns 1 Unit as Limited Partner in the Daft Farms Family Limited Partnership.

C. Assignors desire to assign and gift all of their rights, title and interest in all their individual General Partnership Units and all their individual Limited Partners Units in the Daft Farms Family Limited Partnership to the respective Assignees. Such assignments shall be made from the General Partnership and Limited Partner Units in the Daft Farms Family Limited Partnership owned by Lawrence G. Daft and Michele L. Starrett.

IN WITNESS WHEREOF, this Assignment and Gift of Interest has been executed effective on the day and year first above written.

[Signature of Lawrence G. Daft]<br>
Lawrence G. Daft, Assignor

[Signature of Michele L. Starrett]
Michele L. Starrett, Assignor

ACCEPTANCE

These Assignees do hereby accept the foregoing assignment and agree to be bound by the terms of the Daft Farms Family Limited Partnership Agreement of Limited Partnership with respect to the interest herein assigned.

[Signature of Lawrence G. Daft]
Lawrence G. Daft, Trustee

[Signature of Michele L. Starrett]
Michele L. Starrett, Trustee

CONSENT

The undersigned General Partner of the Daft Farms Family Limited Partnership does hereby consent to the transfer of the Assignor's Partnership Interests effected by the foregoing Assignment of the General Partnership Units and Limited Partnership Units of the Daft Farms Family Limited Partnership to the Trustees of their respective Trusts dated June 20, 2002.

[Signature of Lawrence G. Daft]
Lawrence G. Daft, General Partner

{¶43} The trial court interpreted this Assignment as a full and complete assignment of all of Daft's partnership interests to Starrett and a full and complete assignment of all of Starrett's partnership interest to Daft, while each also simultaneously retaining their own respective partnership interests for themselves. This was the interpretation offered by defendant's summary judgment motion. Yet this interpretation is not supported by any affidavit or deposition testimony; it is only an uncorroborated interpretation put forth by defense counsel.

{¶44} The trial court interpreted the 2002 Assignment as a complete assignment of partnership interests, while at the same time a complete retention of partnership

interests. Yet to interpret it as a complete assignment, we would have to conclude that Starrett has become the sole general partner and owner of 100 general partner and 899 limited partner units, and Daft has become the owner of 1 limited partner unit. We have reviewed the entire record and find such an interpretation untenable in view of all of the other evidence of the parties' intentions.

{¶45} First, every other document in the record, except one, identifies Lawrence G. Daft as the sole general partner of Daft Farms up until his death: (1) The Limited Partnership Agreement; (2) The 2002 Assignment and Gift of Partnership Interest, "Background"; (3) The 2002 Amended Assignment and Gift of Partnership Interest, "Background"; (5) The 2002 Certificates of Ownership, Certificate Numbers One, Two and Three; (6) The 2005 Assignment and Gift of Partnership Interest, "Background"; (7) The 2005 Certificate of Ownership, Certificate Number Six; (8) The 2006 Amended Certificate of Ownership, Certificate Number Three; (9) The 2006 Assignment and Gift of Partnership Interest, "Background"; and (10) The 2006 Certificate of Ownership, Certificate Number Nine.

{¶46} The only document that identifies Starrett as a general partner is the original Certificate of Limited Partnership form filed with the Ohio Secretary of State, which identifies the name and Ohio business address of each general partner. Both Lawrence Daft and Starrett are listed. Although this might expose Starrett to liability to third parties, it does not change the fundamental relations of the partners between themselves. *See In re Westover Hills Ltd.,* 46 B.R. 300, 305 (Bankr. D. Wyo.1985) (discussing the effect of limited partners being erroneously identified as general partners on certificate of limited partnership in the bankruptcy context). More relevant here is the fact that only Lawrence

G. Daft signed the original certificate of limited partnership as general partner. Under R.C. 1782.11(A)(1) the "original certificate of limited partnership shall be signed by *all general partners.*" (Emphasis added.) If Starrett were a general partner in June 2002 she also should have signed the Certificate of Limited Partnership. She did not.

{¶47} In addition, Starrett has consistently represented to the trial court through motions and in her answer, that she is not and never has been a general partner in Daft Farms. In her first motion to dismiss, filed June 16, 2016, Starrett, through counsel, represented to the trial court:

> Plaintiff asserts that Defendant, Michele Starrett is the sole General Partner of Daft Farms Family Limited Partnership. This is incorrect. Michele Starrett is a Limited Partner of the Partnership. The sole General Partner of Daft Farms is the Lawrence G. Daft Revocable Living Trust (the "Trust"). On or about June 20, 2002, a Limited Partnership Agreement was executed by Lawrence G. Daft, now deceased, and Michele Starrett. In this Agreement, Lawrence G. Daft was assigned One Hundred (100) Units as the General Partner of Daft Farms. On or about September 29, 2010, Lawrence G. Daft resolved to transfer his One Hundred (100) shares of the General Partnership units to the Trust.

Starrett attached the 2010 Resolution to her motion to dismiss which states, "Lawrence G. Daft is 100% owner of general partnership units (100 units) in the Daft Farms Family Limited Partnership, and * * * Lawrence G. Daft established an intervivos revocable trust on June 20, 2002 called the Lawrence G. Daft Revocable Living Trust Agreement * * * Lawrence G. Daft now desires to place his 100 shares (100%) of general partnership units into his trust * * *." The Resolution was signed "Lawrence G. Daft, 100% owner of General Partnership Units of Daft Farms Family Limited Partnership." In Starrett's Answer, filed April 13, 2017, Starrett admitted that she was the trustee of the Trust and the Trust was the general partner of Daft Farms and explicitly denied that she is the general partner of Daft Farms or that she received any compensation as such.

**{¶48}** Both Lawrence Daft and Starrett executed documents consistently from 2002 up until Lawrence Daft's death in 2014, that identified Lawrence Daft as the sole general partner. Starrett has consistently represented that she was never a general partner in Daft Farms and that, since Lawrence Daft's death, she is only the trustee and the Trust is the sole general partner. Because Lawrence Daft's and Starrett's own statements best establish their intentions with respect to their partnership interest, any analysis of the documents they executed must be considered in totality.

**{¶49}** Under the standard for summary judgment, the evidence must be reviewed in a light most favorable to the non-moving party. Stepp argued that the only reasonable interpretation of the 2002 Assignment is that it was to set forth the number of shares that would be initially owned by them and to state each partner's assent to those numbers, given that the Limited Partnership Agreement did not set forth how many shares each of them owned, instead listing only the percentages of the initial capital contributions. Stepp's interpretation is a reasonable one.

**{¶50}** However, in view of the totality of the evidence and construing the 2002 Assignment in a light most strongly in Stepp's favor, we find an equally plausible interpretation of the 2002 Assignment. Lawrence Daft, in his individual capacity, assigned his general and limited partnership units to himself (his "respective assignee") in his capacity as "Trustee." Likewise, Starrett, in her individual capacity, assigned her limited partnership interest to herself (her "respective assignee") in her capacity as "Trustee." This was done so that each could hold their respective units as trustees, rather than individuals. And, as trustees of their respective trusts they could place their respective partnership units in their respective trusts.

{¶51} Both Lawrence Daft and Starrett were identified as "assignors" who desired to assign their individual units to their "respective Assignees." Under the "Acceptance" section, as Assignees, they accepted the assignment "with respect to the interest herein assigned" and then each signed their acceptance as "Trustee." Lawrence Daft, General Partner, gave his consent to the transfer of these interests "to the Trustees of their respective Trusts dated June 20, 2002." According to the 2010 Resolution Starrett submitted with her motion to dismiss, the Lawrence G. Daft Revocable Living Trust Agreement was created on June 20, 2002. Thus, the 2002 Assignment was the method used to: (1) transfer Lawrence Daft's units to himself in his capacity as trustee so that he could subsequently transfer them to the Lawrence G. Daft Revocable Living Trust, which he subsequently did in 2010 and (2) transfer Starrett's unit to herself as trustee so that she could subsequently transfer it to her trust. Our interpretation, like Stepp's interpretation, confers no general partnership interest to Starrett and is consistent with subsequent actions taken by Lawrence Daft and Starrett.

{¶52} We find that the trial court's determination that Starrett was a general partner in Daft Farms was erroneous as a matter of law. There are genuine issues concerning the proper interpretation of the 2002 Assignment as reasonable minds can come to more than one conclusion. Importantly, Starrett herself repeatedly denied that she was the general partner of Daft Farms in her answer to Stepp's amended complaint. Because the trial court erred in determining that Starrett was a general partner in 2002, it likewise erred in determining that the attempted transfers of the limited partnership units were ineffective to confer a limited partnership interest to Stepp. The trial court's analysis of the transfer of the limit partnership interest was cursory. However, it made the

determination that "any transfer of a limited partnership interest could be made only in accordance with the partnership agreement or with the consent of all partners." Thus, the trial court agreed with Stepp's argument that, under R.C. 1782.42(A), Stepp could become a limited partner with the consent of all other partners without compliance with the provisions of the Limited Partnership Agreement.

{¶53} Appellees argue that R.C. 1782.42(A) must be read in conjunction with R.C. 1782.17(B)(2), which they argue requires compliance with the provisions of the Limited Partnership Agreement, specifically section 10.3, even though R.C. 1782.42(A)(2) requires only the consent of all partners. However, Appellees did not file a cross appeal challenging the trial court's determination that the partnership interests could be transferred with the consent of all partners. Therefore, they have waived it. Moreover, this interpretation would render R.C. 1782.42(A)(2) superfluous and ineffective. "We must presume that in enacting a statute, the General Assembly intended for the entire statute to be effective. R.C. 1.47(B). Thus, all words should have effect and no part should be disregarded." *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19 (2002).

{¶54} Stepp produced a 2005 Assignment and Gift of Partnership Interest by which Lawrence Daft assigned 25 Units of Limited Partnership and "all of his rights, title and interest in" those Units in Daft Farms to Stepp. Stepp also produced a 2005 Certificate of Ownership Number Six in which Lawrence Daft "certifies that Shawn E. Stepp II is the owner of 25 units in the Daft Farms Family Limited Partnership, and has been admitted to said Partnership as a Limited Partner." It was signed by Lawrence G. Daft as general partner and accepted and signed by Starrett as the custodian of Stepp, who was a minor

at the time of transfer. In 2006, a similar assignment occurred of 50 of the limited partnership units. Again, it was signed by Lawrence G. Daft and accepted and signed by Starrett. Stepp also submitted his affidavit in which he stated that both Lawrence G. Daft and Michele Starrett referred to him as a Limited Partner, Starrett provided Stepp with tax forms for his limited partnership interest, and made verbal offers to buy out Stepp's limited partnership interest.

{¶55} Appellees produced no evidence to support their contention that Starrett withheld consent to the transfers. Her signatures on both transfers accepting the units on behalf of her son, are, at the very least, evidence of her tacit approval of the transfers. Starrett provided no affidavit testimony concerning these transfers, nor did she refute Stepp's affidavit that she provided him tax documents related to his limited partnership units and made past offers to buy out Stepp's limited partnership interest. And, any assertions by her that the transfers were not consensual, some fifteen years later, raises estoppel concerns and strains credibility.

{¶56} Additionally, we find that the appellees provided no evidence in the trial court to support their bald assertions that Lawrence Daft and Stepp failed to comply with the provisions of section 10.3. For example, the summary judgment motion states "Section 10.4(e) of the Agreement has been violated because the $1,000 transfer fee was never paid." Yet no financial records or affidavit testimony was submitted to support this assertion.

{¶57} Construing the evidence most strongly in favor of Stepp, we find that a genuine issue exists as to whether he has a limited partnership interest in Daft Farms. The evidence in the record strongly indicates that Starrett was never a general partner in

Daft Farms and that she approved Lawrence Daft's transfers of his limited partnership units to Stepp in 2005 and 2006. Since reasonable minds could come to different conclusions with regard to Stepp's interest in Daft Farms, appellees were not entitled to summary judgment. As a matter of law, the trial court erred in granting appellees summary judgment. We sustain Stepp's assignment of error.

## III. CONCLUSION

**{¶58}** The trial court erred in granting appellees summary judgment. We sustain Stepp's sole assignment of error and reverse the judgment of the trial court.

JUDGMENT REVERSED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that Appellees shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Vinton County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court

BY:      _____
         Michael D. Hess, Judge



## NOTICE TO COUNSEL


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**